**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MELANIE SLOAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:　　15-01389 (RC) |
| v. | : | |
| | : | Re Document Nos.:　　7, 11, 13, 20 |
| SOUL CIRCUS, INC., | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING PLAINTIFF'S MOTION TO REMAND,**
**DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS,**
**DENYING AS MOOT PLAINTIFF'S MOTION TO CERTIFY CLASS, AND**
**DENYING AS MOOT DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## I. INTRODUCTION

Defendant Soul Circus, Inc. operates UniverSoul Circus, a touring circus troupe that claims to be committed to the proper treatment of animals and opposed to cruelty or mistreatment of animals. Contending that the Circus's claims are false and misleading under the District of Columbia Consumer Protection Procedures Act (CPPA), Plaintiff Melanie Sloan filed suit against the Circus in the Superior Court of the District of Columbia. On behalf of herself and a class of all District of Columbia residents who have purchased UniverSoul Circus tickets in the past three years because of the Circus's false and misleading claims, Ms. Sloan charged the Circus with violations of six CPPA subsections. She sought CPPA statutory remedies: treble damages, or $1,500 per violation, whichever is greater; attorney's fees; punitive damages; an injunction against the Circus's practices; and any other relief that the Court deems proper.

Citing the parties' complete diversity of citizenship and an amount in controversy exceeding $75,000, the Circus removed to this Court under 28 U.S.C. § 1332 and moved to

dismiss Ms. Sloan's claims. Ms. Sloan moved to remand the case to D.C. Superior Court and argued that the Circus failed to meet its burden to prove a sufficient amount in controversy. While the Circus's motion to dismiss and Ms. Sloan's motion to remand were still pending, Ms. Sloan also moved for class certification under Federal Rule of Civil Procedure 23, and the Circus moved for a protective order in anticipation of discovery.

Because the Court finds that the Circus's estimates of the amount in controversy are too speculative to establish subject matter jurisdiction, the Court will grant Ms. Sloan's motion to remand. Because the parties must therefore litigate Ms. Sloan's claims in D.C. Superior Court, the Court denies as moot the Circus's motion to dismiss, Ms. Sloan's motion for class certification, and the Circus motion for a protective order.[1]

## II.  FACTUAL BACKGROUND[2]

According to the Complaint, Ms. Sloan has a strong commitment to the proper care of animals: she "does not patronize, or purchase tickets to . . . businesses that . . . display wild animals such as elephants, lions and tigers, who cannot safely, humanely, and healthfully be kept in captivity." Class Action Compl. ¶ 7, ECF No. 1-1. The Circus operates a touring circus troupe

---

[1] The Court also denies as moot the Circus's request for an oral hearing on its motion to dismiss and denies the Circus's motion to amend its Notice of Removal. *See* Reply Pl.'s Mem. Opp'n Def.'s Mot. Dismiss Pl.'s Compl. & Req. Oral Hr'g 10, ECF No. 10 (requesting oral hearing); Def.'s Mem. Opp'n Pl.'s Mot. Remand 10 n.5, ECF No. 12 (moving to amend the Circus's Notice of Removal); *see also infra* Part VII (discussing the Circus's motion to amend its Notice of Removal).

[2] At the motion to dismiss stage, the Court presumes that the plaintiff's factual allegations are true. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Although at this time the Court's analysis focuses on the merits of Ms. Sloan's motion to remand, the Court nonetheless presumes the plaintiff's factual claims are true for these purposes. *See, e.g., Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 152 (D.D.C. 2007) (accepting the plaintiff's version of the facts as background in the Court's decision on a motion to remand).

that performs under the name "UniverSoul Circus." *Id.* ¶ 9. On June 11, 2015, Ms. Sloan

received a promotional email that offered tickets to the Circus's shows at the National Harbor in

Prince George's County, Maryland, scheduled for selected dates from June 24, 2015 through

July 16, 2015. *Id.* ¶¶ 89, 92. Because Ms. Sloan would not purchase tickets to the Circus's show

if the show would "display wild animals . . . who cannot safely, humanely, and healthfully be

kept in captivity," *id.* ¶ 7, Ms. Sloan visited the Circus's website and viewed the Circus's

"Animal Rights [Policy] Statement" before purchasing tickets to see the Circus's show. *Id.* ¶ 93.

The Animal Rights Policy Statement made numerous representations about the Circus's

strong commitment to animal rights, including statements saying that the Circus "is committed to

the proper treatment of animals," "oppose[s] any form of cruelty or mistreatment of animals,"

and "will not tolerate any mistreatment on [the] circus site." *Id.* ¶ 38. Further, the Animal Rights

Policy Statement proclaimed that "[i]n over 19 years and more than 10,000 performances, none

of our animal vendors have ever been cited for animal abuse while performing at the UniverSoul

Circus." *Id.* The Circus's website corroborated these statements by primarily showing images of

human performers, rather than animals. *Id.* ¶ 36.

The Circus's Animal Rights Policy Statement and website assured Ms. Sloan of the

Circus's commitment to animal rights, and Ms. Sloan purchased tickets to see the Circus's show

on July 11, 2015. *Id.* ¶ 93. If the Circus had not published its Animal Rights Policy Statement,

and if the Circus had included more images of animals on its website, Ms. Sloan would have

understood that the Circus would use wild animals in its performances—a practice that Ms.

Sloan would not want to support. *Id.* ¶¶ 7, 94. But for the Circus's Animal Rights Policy

Statement and website, Ms. Sloan would not have purchased tickets to see the Circus's show. *Id.*

¶ 94.

As it turns out, Ms. Sloan claims that some of the Circus's animal vendors have received citations from the United States Department of Agriculture (USDA) for violating the Animal Welfare Act (AWA)[3] while touring with the Circus. Although the Circus itself does not have a license to exhibit animals in its performances, the Circus leases animals from outside vendors who do have USDA licenses. Class Action Compl. ¶¶ 43–44. And Ms. Sloan claims that, on at least seventeen occasions, USDA inspectors found that the Circus's vendors had violated the AWA. *See id.* ¶¶ 62–64, 67, 69–71, 74–77, 79, 81, 84–86, 88; Class Action Compl. Ex. B, ECF No. 3-2 (compiling USDA inspection reports). Ms. Sloan further claims that the Circus's animal vendors have also received USDA citations on other occasions, when they were not touring with the Circus. *See id.* ¶ 46; *id.* Ex. C. The Complaint also reports additional animal welfare issues, arising outside of the AWA context, that afflicted animals leased by the Circus. *Id.* ¶¶ 48–60, 66, 78, 80, 82–83.

After Ms. Sloan learned about the Circus's long history of contracting with vendors who have been cited for AWA violations, Ms. Sloan chose not to attend the Circus's show on July 11, 2015. *Id.* ¶ 95. She explained that she chose not to attend because she "did not want to support a circus that contracts with vendors who mistreat animals and violate animal welfare laws," and because she "wants to teach her daughter about the humane treatment of animals." *Id.*

## III. PROCEDURAL HISTORY

Instead of attending the Circus's show, Ms. Sloan filed suit against the Circus in the Superior Court of the District of Columbia on August 10, 2015. *See* Class Action Compl. 1. On behalf of herself and a putative class of "all residents of the District [of Columbia] who, in the

---

[3] Pub. L. No. 89-544, 80 Stat. 350 (1966) (codified as amended at 7 U.S.C. §§ 2131–2159).

last three years, purchased tickets to Defendant's shows because of Defendant's unlawful trade

practices," Ms. Sloan charged the Circus with violations of six subsections of the District of

Columbia Consumer Protection Procedures Act (CPPA), D.C. Code §§ 28-3901–28-3913. Class

Action Compl. ¶¶ 11–12, 98. Ms. Sloan alleged that the Circus

> represent[ed] that its services have a source, sponsorship, approval, certification, characteristics, and/or benefits that they do not have, in violation of . . . § 28-3904(a);
>
> . . . represent[ed] that persons engaged by, or exhibiting with, [the Circus] have a sponsorship, approval, status, affiliation, certification, or connection that the persons do not have, in violation of . . . § 28-3904(b);
>
> . . . represent[ed] that [the Circus]'s services are of particular standard or quality, but which in fact, are of a different standard or quality, in violation of . . . § 28-3904(d);
>
> . . . misrepresent[ed] material facts which have a tendency to mislead, in violation of . . . § 28-3904(e);
>
> . . . fail[ed] to state material facts, which failure tends to mislead, in violation of . . . § 28-3904(f); and
>
> . . . us[ed] innuendo and ambiguity as to material facts, which have a tendency to mislead, in violation of . . . § 28-3904(f-1).

*Id.* ¶ 98. Ms. Sloan sought CPPA statutory remedies: treble damages, or $1,500 per violation,

whichever is greater; attorney's fees; punitive damages; an injunction against the Circus's

practices; and any other relief that the Court deems proper. *Id.* at 22 (citing D.C. Code

§ 28-3905).

The Circus removed to this Court under 28 U.S.C. § 1332 and 28 U.S.C. § 1441. *See*

Def.'s Notice of Removal ¶ 9, ECF No. 1. In support of removal, the Circus's Notice of Removal

claimed that "the United States District Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the

Circus and all potential parties-plaintiff and the amount in controversy . . . exceeds $75,000." *Id.*

The Circus explained that, because Ms. Sloan's complaint alleged "tens of thousands" of potential CPPA violations and a class whose membership is "so numerous that joinder of all of them is impracticable," the complaint alleged at least fifty-one CPPA violations in the aggregate. *Id.* ¶¶ 5, 8; *cf.* Class Action Compl. ¶ 16. Assuming that each violation is entitled to statutory damages at $1,500, the Circus reasoned that the total amount in controversy exceeded $75,000. Def.'s Notice of Removal ¶¶ 5, 8; *see also* D.C. Code § 28-3905(k)(2) ("Any claim under [the CPPA] . . . may recover . . . $1,500 per violation . . . , payable to the consumer . . . .").

After removing to this Court, the Circus moved to dismiss Ms. Sloan's claims. *See* Def.'s Mot. Dismiss, ECF No. 7. While the motion to dismiss was pending, Ms. Sloan filed two additional motions: a motion to remand the case to D.C. Superior Court, and a motion for class certification. *See* Pl.'s Mot. Remand, ECF No. 11; Pl.'s Mot. Class Certification, ECF No. 13. Ms. Sloan's motion to remand contends first that the Circus erred by aggregating the class members' claims to satisfy the jurisdictional amount requirement, and second that Ms. Sloan's individual claims against the Circus do not meet the $75,000 amount-in-controversy requirement. *See* Mem. P. & A. Supp. Pl.'s Mot. Remand 4–6, ECF No. 11-1.

In opposition, the Circus challenged Ms. Sloan's motion to remand as untimely. Def.'s Mem. Opp'n Pl.'s Mot. Remand 3–6, ECF No. 12. To respond to Ms. Sloan's nonaggregation argument, the Circus moved to amend its Notice to invoke this Court's jurisdiction under 28 U.S.C. § 1332(d), in addition to jurisdiction under 28 U.S.C. § 1332(a). *Id.* at 10 n.5. Because a litigant may establish § 1332(d) diversity jurisdiction over a class action by showing that more than one hundred class members exist and their aggregate claims put more than $5,000,000 in controversy, the Circus argued that "[t]he Court has diversity jurisdiction under § 1332(d) because Sloan's proposed class has more than 100 potential members with claims likely

exceeding $5,000,000." *Id.* at 18–21. To justify its class size estimates, the Circus produced an affidavit from the Circus's director of operations, who attested to the Circus's ticket purchases and advertising activities in the District of Columbia. *See* Johnson Aff., ECF No. 12-1. Lastly, the Circus maintained that Ms. Sloan's individual claims against the Circus put more than $75,000 in controversy anyway, so the Court still has diversity jurisdiction under 28 U.S.C. § 1332(a). Def.'s Mem. Opp'n Pl.'s Mot. Remand 10–18.

Ms. Sloan's reply responded with two attacks on the Circus's invocation of jurisdiction under 28 U.S.C. § 1332(d). First, she contended that the Circus's estimated number of potential class members is defective because it is ambiguous, speculative, and "an incomplete calculation" that does not address whether the ticket purchasers during the last three years viewed the offending statements on the Circus's website. Reply Mem. Supp. Pl.'s Mot. Remand 6–7, ECF No. 14. Second, Ms. Sloan charged the Circus with assuming without a legal basis that the CPPA allows consumers to recover separate damages awards for simultaneous CPPA violations occurring in connection with a single business transaction. *Id.* at 7–9.

In response to the Circus's § 1332(a) arguments, Ms. Sloan likewise asserted two counterarguments. First, she explained that the Circus's statements about injunctive relief, punitive damages and attorney's fees were factually unsupported and based on the faulty assumption that such claims may be aggregated for amount-in-controversy purposes. *Id.* at 4–6. Second, she charged the Circus with making another assumption without a legal basis: the assumption that, by merely observing a Circus communication that violated the CPPA, Ms. Sloan could recover CPPA statutory damages. *Id.* at 3–4.

Because the Court agrees with Ms. Sloan's view of the issue, the Court will grant Ms. Sloan's motion to remand.

## IV.  TIMELINESS OF THE MOTION TO REMAND

As an initial matter, the Court finds that Ms. Sloan's motion to remand is timely. "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." 28 U.S.C. § 1447(c). But, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* In other words, "[s]ubject matter jurisdiction may be challenged at any point" during the course of a lawsuit. *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 69 (D.D.C. 2014).

For amount-in-controversy disputes, therefore, the thirty-day deadline for motions to remand applies only to challenges based on a removing defendant's *procedural* "failure to provide sufficient facts in the Notice of Removal to establish the necessary amount in controversy." *See Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014). If the motion to remand instead argues that, "based on the facts contained in the Notice of Removal, defendant has failed to establish that the amount in controversy exceeds the statutory minimum as a matter of law," it "presents a *bona fide* challenge to this Court's subject matter jurisdiction." *Id.* The thirty-day deadline does not apply to such a challenge. *See id.*

Ms. Sloan's motion to remand is a *bona fide* challenge to this Court's jurisdiction, not a mere procedural challenge to the sufficiency of the Notice of Removal. Ms. Sloan's motion was filed thirty-six days after the Circus's Notice of Removal, so it was late under 28 U.S.C. § 1447(c)'s thirty-day deadline. *See* Pl.'s Mot. Remand 2 (dated October 1, 2015); Def.'s Notice of Removal 5 (dated August 26, 2015). But in her motion, Ms. Sloan asked the Court to hold that it lacks subject matter jurisdiction based on the facts provided in the Notice of Removal; she did not allege that the Notice of Removal failed to provide the facts necessary to establish subject

matter jurisdiction. *See* Mem. P. & A. Supp. Pl.'s Mot. Remand 3 (arguing that the Circus failed to establish in its Notice of Removal "that the amount in controversy exceeds the $75,000 statutory minimum for diversity jurisdiction required by 28 U.S.C. § 1332(a)" and thus "remand is mandatory"). And Ms. Sloan clarified that her motion brought a jurisdictional challenge when she explained that she was not bringing a procedural challenge subject to the thirty-day deadline. *See id.* at 3 n.2. Because Ms. Sloan's motion to remand asserted a *bona fide* challenge to this Court's jurisdiction, it is still timely, despite 28 U.S.C. § 1447(c)'s thirty-day deadline.[4]

## V.  STANDARD OF REVIEW

"A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)). As the party opposing the motion to remand, the Circus "bears the burden of establishing that subject matter jurisdiction exists in federal court." *Flowers Bakeries*, 36 F. Supp. 3d at 30

---

[4] Of course, Ms. Sloan worded her motion carefully, to avoid capping the amount of damages she and the proposed class may be eligible to recover. *See* Pl.'s Mot to Remand 1 (alleging that "Defendant's Notice of Removal fails to meet Defendant's burden of proving that the amount in controversy is sufficient to confer subject matter jurisdiction," not simply, for instance, that "the amount in controversy is insufficient to confer subject matter jurisdiction"); Mem. P. &. A. Supp. Pl.'s Mot. Remand 1, 3, 5 (same).

But even if Ms. Sloan's motion is time-barred because it alleges a procedural defect with the Circus's Notice of Removal, the Court may still raise the issue of its own subject matter jurisdiction *sua sponte*. *See* 28 U.S.C. § 1447(c) (requiring remand whenever "it appears that the district court lacks subject matter jurisdiction," without specifying any procedural prerequisites); *Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005) ("It is well established that a federal court cannot act in the absence of jurisdiction, and that jurisdictional issues may be raised by the court *sua sponte*." (citations omitted)); *Bell v. U.S. Dep't of Health & Human Servs.*, 67 F. Supp. 3d 320, 321 (D.D.C. 2014) ("[T]he Court may analyze subject-matter jurisdiction *sua sponte*."). As a practical matter, therefore, the timeliness of Ms. Sloan's motion to remand does not affect the validity of the Court's jurisdictional analysis below.

(internal quotation marks omitted) (quoting *RWN Dev. Grp., LLC v. Travelers Indem. Co. of Conn.*, 540 F. Supp. 2d 83, 86 (D.D.C. 2008)); *accord Doe v. Georgetown Synagogue—Kesher Israel Congregation*, No. 15-0026, 2015 WL 4509553, at *2 (D.D.C. July 24, 2015) ("The party supporting removal bears the burden of establishing the Court's jurisdiction." (internal quotation marks omitted) (quoting *McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 138 (D.D.C. 2015))).

## VI.  DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)

Federal district courts have original jurisdiction if the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). The parties' diversity is not disputed here. *See* Mem. P. &. A. Supp. Pl.'s Mot. Remand 2. The Court's analysis therefore addresses only whether the amount in controversy exceeds $75,000, as required to establish subject matter jurisdiction under 28 U.S.C. § 1332(a).

### A.  The *Dart* Framework

The Supreme Court recently articulated a two-phase framework for adjudicating amount-in-controversy challenges to removal jurisdiction. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553–54 (2014). In the first phase, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. But if the plaintiff contests the defendant's amount-in-controversy allegation, she triggers the second *Dart* phase. *Id.*

In the second phase, removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 553–54 (internal quotation marks omitted) (quoting 28 U.S.C. § 1446(c)(2)(B)). "Discovery may be

taken," "both sides submit proof," and in the end, "the district court must make findings of jurisdictional fact." *Id.* at 554 (quoting H.R. Rep. No. 112-10, at 16 (2011)). The defendant still bears the burden to establish the amount in controversy, though it must prove the amount in controversy by only a preponderance of the evidence, not to a legal certainty. *See id.* ("[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met." (alteration in original) (internal quotation mark omitted) (quoting H.R. Rep. No. 112-10, at 16)); *Doe v. Georgetown Synagogue—Kesher Israel Congregation*, No. 15-0026, 2015 WL 4509553, at *2 (D.D.C. July 24, 2015) (explaining, in a post-*Dart* opinion, that the removing defendant still bears the burden of establishing jurisdiction). Because Ms. Sloan has challenged the Circus's amount-in-controversy allegations, the Court's analysis falls within this second *Dart* phase and follows its prescriptions.[5]

---

[5] *Dart* did not prescribe procedures governing what it means for "both sides [to] submit proof" in the second phase of an amount-in-controversy adjudication. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199–1200 & n.4 (9th Cir. 2015) (observing that "[t]he Supreme Court did not decide the procedure for each side to submit proof on remand," and instructing the district court to "set a reasonable procedure in the first instance so that each side has a fair opportunity to submit proof").

Post-*Dart* cases have allowed both sides to "submit proof" in different ways. For instance, courts have adjudicated the amount in controversy on the basis of the parties' filings and supplemental affidavits or declarations. *See, e.g.*, *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 914–17 (11th Cir. 2014); *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1334–36 (E.D. Cal. 2015). In other cases, courts have allowed or ordered the parties to file additional briefing. *See, e.g.*, *Scenic Health Alliance, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 14-52900, 2015 WL 4999640, at *1 (S.D. Fla. Aug. 24, 2015) (noting that the defendant was given leave to file a brief "Sur-reply" to the plaintiff's motion to remand); *Hughes v. Fosdick*, No. 14-5350, 2015 WL 3372396, at *1 (N.D. Cal. Apr. 29, 2015) (recounting how the Court requested supplemental briefing and ordered production of additional evidence).

In line with *Dudley* and *Garnett*, the Court declines to request additional briefing from the parties. Because the Circus has invoked jurisdiction under the Class Action Fairness Act (CAFA), *see infra* Part VII, the Circus suffers little from this decision. "[U]nder CAFA, class actions may be removed at *any* point during the pendency of the litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable." *Dudley*, 778 F.3d

The Supreme Court did not otherwise alter preexisting doctrines governing jurisdiction under 28 U.S.C. § 1332(a). *Cf. Dart*, 135 S. Ct. at 554 (pointing out that "no antiremoval presumption attends cases invoking [the Class Action Fairness Act]," but declining to rule on whether such a presumption is proper in "mine-run diversity cases"). Just as it was before *Dart*, therefore, when a removing defendant seeks to establish this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), there is "a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 103 (D.D.C. 2008) (alterations and internal quotation marks omitted) (quoting *RWN Dev. Grp., LLC v. Travelers Indem. Co. of Conn.*, 540 F. Supp. 2d 83, 89 (D.D.C. 2008)). "[T]he court must resolve any ambiguities concerning the propriety of removal in favor of remand." *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297 (D.D.C. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Johnson–Brown v. 2200 M Street LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003)).

## B.  Nonaggregation

In class actions and cases with multiple plaintiffs, an additional consideration applies to the amount-in-controversy analysis: class action plaintiffs' claims are generally not aggregated to establish the amount in controversy for diversity jurisdiction under 28 U.S.C. § 1332(a). *See Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 32 (D.D.C. 2014) ("'The separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement' except 'in cases in which two or more plaintiffs unite to

---

at 913 (citing 28 U.S.C. § 1453(b), and explaining that the "traditional one-year window for removal does not apply to class actions"). Thus, if while in D.C. Superior Court more evidence about potential damages comes to light and shows an amount in controversy sufficient to give this Court jurisdiction, the Circus may remove once again to federal court. *See id.* at 917.

enforce a single title or right in which they have a common and undivided interest.'" (alteration omitted) (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969))).

This principle extends to CPPA private attorney general actions brought on behalf of a class. "[C]ourts within this district have unanimously concluded that so long as individual consumers are eligible to recover individual damages, the consumers do not have a 'common and undivided interest' that may be aggregated under the non-aggregation principle announced in *Snyder.*" *Flowers Bakeries*, 36 F. Supp. 3d at 32. Thus, "only the damages to which [the plaintiff] would be personally entitled—rather than those on behalf of the public—will count toward satisfying the $75,000 jurisdictional threshold." *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 72 (D.D.C. 2014) (alteration in original) (internal quotation marks omitted) (quoting *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297–98 (D.D.C. 2013)).[6]

Applying this principle to Ms. Sloan's claims here, the Court must assess, for purposes of subject matter jurisdiction under 28 U.S.C. § 1332(a), only the amount in controversy between the Circus and Ms. Sloan—not the total amount in controversy between the Circus and Ms.

---

[6] One exception exists when a plaintiff brings a CPPA claim for disgorgement, rather than damages. Because proceeds from a disgorgement claim are taken directly from a defendant to a common fund, a collective disgorgement claim is a "common and undivided interest" that may be aggregated. *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 32 n.3 (D.D.C. 2014).

But Ms. Sloan does not seek disgorgement here. *Compare Williams v. Purdue Pharma Co.*, No. 02-0556, 2003 WL 24259557, at *5 (D.D.C. Feb. 27, 2003) (finding that the plaintiffs sought disgorgement when they claimed the defendants were "liable for a refund of all moneys acquired," and accordingly aggregating the plaintiffs' claims to assess the amount in controversy), *with* Class Action Compl. 22 (seeking CPPA statutory remedies but not a lump-sum refund of monies the Circus acquired through its allegedly unlawful trade practices); *see also* Mem. P. & A. Supp. Pl.'s Mot. Remand 5 n.3 ("Plaintiff seeks individual statutory damages and not the disgorgement of a common fund to be divided amongst individual claimants . . . ."). The Court therefore will not aggregate the proposed class's claims to assess the amount in controversy for jurisdiction under 28 U.S.C. § 1332(a).

Sloan's proposed class. With this in mind, the Court now turns to that analysis. Because the CPPA allows prevailing plaintiffs to recover statutory damages, attorney's fees, punitive damages, and injunctive relief, the Court addresses each possible basis for the amount in controversy in turn.

## C.  Statutory Damages

A prevailing CPPA plaintiff may recover "[t]reble damages, or $1,500 per violation, whichever is greater." D.C. Code § 28-3905(k)(2)(A). Ms. Sloan's complaint claims this amount of damages, without estimating the total statutory damages she believes she deserves. *See* Class Action Compl. 22 (seeking an order from the Court "ordering Defendant to pay to Plaintiff and to the Class, treble damages, or $1,500 per violation, whichever is greater"). Because neither party argued for an amount in controversy based on an award of treble damages, the Court will not consider that route to jurisdiction. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 12–15 (focusing arguments on whether Ms. Sloan might have been exposed to fifty-one alleged CPPA violations valued at $1,500 per violation, not on her actual or treble damages); Reply Mem. Supp. Pl.'s Mot. Remand 3–4 (same); *see also Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

But the amount in controversy based on "$1,500 per violation" is equally unclear, despite the briefing on that calculation. Most significantly, the parties disagreed about how to count "violations." The Circus implied that an alleged "violation" occurred every time Ms. Sloan "viewed, received, or [was] otherwise exposed to" the Circus's communications with D.C. residents. Def.'s Mem. Opp'n Pl.'s Mot. Remand 14–15. The Circus also implied that multiple

"violations" could occur in connection with a single ticket purchase. *See id.* at 20–21 (calculating an aggregate amount in controversy by multiplying the estimated number of class members who purchased tickets (2,667) by the number of violations per ticket purchaser (6) and by the amount of damages per violation ($1,500) to obtain $24,003,000 in total damages).

Ms. Sloan found the Circus's contentions ungrounded. She contended, first, that the Circus jumped to conclusions by assuming that each of its communications in the past three years was a "violation"; not all of the Circus's communications were necessarily unlawful under the CPPA. Reply Mem. Supp. Pl.'s Mot. Remand 2–3. Second, Ms. Sloan noted that the Circus failed to cite legal authority supporting the proposition that a consumer's mere observation of a merchant's communications can trigger CPPA statutory damages. *Id.* at 3–4. Finally, Ms. Sloan asserted that it is unclear under the law "whether the CPPA allows separate recoveries for multiple simultaneous violations of the CPPA occurring in connection with a single transaction." *Id.* at 7–9 (emphasis omitted). In support, Ms. Sloan cited two cases—including one in this Court—that counted violations of a consumer protection statute by the number of transactions, not the number of legal violations alleged. *See id.* at 8 (citing *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 631–32 (6th Cir. 2009) (allowing one statutory damages award per allegedly unlawful phone call), and *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 300–01 (D.D.C. 2013) (allotting one CPPA statutory damages award per purchase of the defendant's product)).

The Court agrees with Ms. Sloan's view of the matter. It is true that a person can violate the CPPA "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904. But the CPPA specifies that, for claims brought by testers and nonprofit organizations, damages claims may seek "relief from the use of a trade practice . . . when that trade practice involves consumer goods or services that [the consumer tester or nonprofit

organization] *purchased or received*." D.C. Code § 28-3905(k)(1)(B) (emphasis added); *see also id.* § 28-3905(k)(1)(C) (using nearly identical language). The statute implies therefore that CPPA statutory damages awards flow from a *purchase or receipt* of consumer goods or services—not the mere *observation* of a merchant's unlawful communication.[7] And this Court has already applied that type of calculation in a previous case. *See Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297–301 (D.D.C. 2013) (rejecting the defendant's argument that CPPA "'violations' include not simply purchases of cans, but also instances of viewing allegedly misleading advertising," and instead adopting the plaintiff's binding stipulations that he was asserting claims based only on his goods purchased).

The Court therefore rejects the Circus's assumption that a CPPA violation occurred every time Ms. Sloan "viewed, received, or [was] otherwise exposed to" one of the Circus's advertisements. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 15. Although existing law is not

---

[7] Because, when the CPPA authorizes *consumers'* claims (unlike when it authorizes testers' and nonprofit organizations' claims), the CPPA does not include language about "goods or services . . . *purchased or received*," the statute does not clearly specify whether an individual consumer's alleged CPPA violation must flow from a purchase or receipt of goods or services. *See* D.C. Code § 28-3905(k)(1)(A) (declaring merely that "[a] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District"). But "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme"—for instance, when "the same terminology is used elsewhere in a context that makes its meaning clear." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

Here, the CPPA uses the same term in its provisions authorizing claims by consumers, testers, and nonprofit organizations: the consumer, tester, or nonprofit organization may "bring an *action seeking relief* from the use of a trade practice in violation of a law of the District." *See* D.C. Code § 28-3905(k)(1)(A), (B), (C) (emphasis added). For testers' and nonprofit organizations' "action[s] seeking relief," the statute clarifies that those actions may arise from consumer goods or services purchased or received to test those goods or services' qualities. *See id.* § 28-3905(k)(B), (C). In doing so, the statute also implies that *any* "action seeking relief" should arise from the purchase or receipt of consumer goods or services. Because the CPPA uses the identical term ("action seeking relief") to authorize consumers' claims, *see id.* § 28-3905(k)(A), the surrounding context clarifies that consumers' claims also should arise from the purchase or receipt of consumer goods or services.

conclusive, *see supra* note 6, it indicates that CPPA statutory damages do not flow from each instance Ms. Sloan viewed the Circus's advertisements, but instead from each purchase Ms. Sloan made because of those advertisements. Even assuming that all Circus advertisements in the past three years violated the CPPA, the Circus did not show that Ms. Sloan's mere observation of those advertisements can trigger statutory damages. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 12–15 (failing to support its assumption that every observed CPPA violation means an additional $1,500 in statutory damages). Nor did the Circus support its assumption that multiple CPPA violations, in connection with a single purchase, mean that a consumer can receive multiple $1,500 statutory damages awards. *See id.* at 20–21 (failing to cite supporting law).[8] Tellingly, the Circus did not provide the Court with even an estimate of Ms. Sloan's total statutory damages. Instead, the Circus merely declared that "it is inconceivable" that Ms. Sloan did not view, receive, or otherwise become exposed to "at least fifty-one of [the Circus's] communications" in the three-year period before she filed her complaint. *See id.* at 12, 15.

---

[8] Odd results would follow if the Court were to accept the Circus's theory that, when a communication violates multiple CPPA provisions at once, mere observation of that communication can trigger multiple statutory damages awards. For instance, consider a situation in which Consumer A saw a false or misleading communication ten times, Consumer B saw the same communication just once, and both consumers went on to buy one ticket that was identical to the other's. Under the Circus's theory, Consumer A could press a claim for far greater statutory damages than Consumer B, even though Consumer A purchased the same number of tickets (one).

Likewise, consider the situation in which Consumer C saw the communication once and bought ten tickets for his entire extended family, but Consumer D saw the communication fifty times and bought only one ticket. Even if Consumer D spent less money on her one ticket than Consumer C did on his ten (which would likely be the case), Consumer D could claim far greater statutory damages than Consumer C under the Circus's theory of damages.

"In statutory interpretation it is a given that statutes must be construed reasonably so as to avoid absurdities . . . ." *In re Nofziger*, 925 F.2d 428, 434 (D.C. Cir. 1991) (per curiam). The Court cannot adopt the Circus's damages theory when such absurd consequences might follow.

Because the Circus's claims about Ms. Sloan's statutory damages are speculative and unsupported, the Circus failed to establish Ms. Sloan's total statutory damages by a preponderance of the evidence. *See Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 154 (D.D.C. 2007) ("[J]urisdiction cannot be based on probabilities, surmise or guesswork." (internal quotation marks omitted) (quoting *Hohn v. Volkswagen of Am., Inc.*, 837 F. Supp. 943, 945 (C.D. Ill. 1993))). To avoid engaging in a speculative calculation, the Court will therefore estimate the amount in controversy between Ms. Sloan and the Circus based on the approach taken in *Zuckman v. Monster Beverage Corp. See* 958 F. Supp. 2d 293, 297–301 (D.D.C. 2013). In *Zuckman*, the Court assumed that purchases, not "instances of viewing allegedly misleading advertising," matter for the statutory damages calculation. *See id.* Here, Ms. Sloan's complaint asserts that she purchased four tickets to the Circus. Class Action Compl. ¶ 93. If each ticket purchase merits one award of $1,500 in statutory damages, then Ms. Sloan's total statutory damages would be just $6,000—far below the $75,000 amount in controversy required to establish jurisdiction under 28 U.S.C. § 1332(a). To establish $75,000 in controversy, the Circus must make up the difference from other sources. As the analysis below shows, it cannot.

### D.  Attorney's Fees

"Attorney fees are part of the amount in controversy if they are provided for by statute or contract." *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 144 (D.D.C. 2014) (quoting *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013)). A prevailing CPPA plaintiff may recover "[r]easonable attorney's fees" by statute. D.C. Code § 28-3905(k)(2)(B). The Court therefore considers attorney's fees as part of the amount in controversy here.

The Circus's attorney's fees analysis was, however, just as speculative and unsupported as its statutory damages analysis. Instead of providing the Court with an estimate of the amount of attorney's fees Ms. Sloan may recover, the Circus merely declared that "it is abundantly clear that, if Sloan were to prevail, her attorneys' fee demand likely would be in the high tens of thousands of dollars." Def.'s Mem. Opp'n Pl.'s Mot. Remand 17. The Circus reasoned, therefore, that Ms. Sloan's attorney's fee demand "is quite likely enough to satisfy the amount in controversy on its own." *Id.*

To justify its statements, the Circus alluded to this Court's opinion in *Dumosch*, 13 F. Supp. 3d at 144–45, in which the Court found that the plaintiff failed to show, as a "legal certainty," that the defendant would not receive $75,000 in attorney's fees. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 17. But because *Dumosch* predates the Supreme Court's opinion in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014), it has limited weight. *Compare Dart*, 135 S. Ct. at 547 (decided December 15, 2014), *with Dumosch*, 13 F. Supp. 3d at 135 (dated February 10, 2014). *Dumosch*'s attorney's fee analysis is even less on point here because it analyzes fees using the "legal certainty" standard in the context of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, not the preponderance of the evidence standard *Dart* endorsed in the context of a motion to remand. *Compare Dart*, 135 S. Ct. at 554, *with Dumosch*, 13 F. Supp. 3d at 140–41, 144–45.

Setting *Dumosch* aside, the Court is left with the Circus's bald assertions that Ms. Sloan's attorney's fee demand "likely would be in the high tens of thousands of dollars" and "is quite likely enough to satisfy the amount in controversy on its own." Def.'s Mem. Opp'n Pl.'s Mot. Remand 17. These statements do not establish the amount of attorney's fees in controversy for two reasons. First, they implicitly aggregate Ms. Sloan's attorney's fees with those of the

potential class, which "is not appropriate in a CPPA case." *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010); *accord Zuckman*, 958 F. Supp. 2d at 301 ("[F]ees cannot be aggregated with those of the general public in order to satisfy the $75,000 threshold."). Second, they are "based on pure conjecture" and are therefore "inadequate to support an assertion of diversity jurisdiction." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 107 (D.D.C. 2008) (internal quotation mark omitted) (quoting *Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385, 2006 WL 1028959, at *2 (D.D.C. Apr. 18, 2006)). Moreover, as this Court has noted in the past, "the Court is not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends upon a lump sum award of attorney's fees." *Id.*

In the alternative, the Circus argues that if the Court were to use a "33% rule of thumb" and assume Ms. Sloan would receive attorney's fees equal to thirty-three percent of her damages, "the likelihood of the total amount in controversy exceeding $75,000 is increased substantially." Def.'s Mem. Opp'n Pl.'s Mot. Remand 17. But this line of reasoning also lacks substance. As discussed above, the Circus's claims about Ms. Sloan's statutory damages are speculative and unsupported. *See supra* Part VI.C. Just as zero and zero do not make one, adding thirty-three percent of a speculative amount of damages to the speculative amount of damages does not make the sum less speculative. And if Ms. Sloan's statutory damages amount to $1,500 per ticket, or $6,000 total, then under the "33% rule of thumb," Ms. Sloan's share of the attorney's fees would be just $2,000. *See generally Zuckman*, 958 F. Supp. 2d at 301–02 (calculating a class member's share of the attorney's fees based on a "reasonable contingency fee"—thirty-three percent of the amount the class member could recover in statutory damages). Together with $6,000 in statutory

damages, the amount in controversy is $8,000. The Circus is still far short of the $75,000 amount

in controversy required to invoke this Court's jurisdiction under 28 U.S.C. § 1332(a).

### E.  Punitive Damages

Prevailing plaintiffs may obtain punitive damages under the CPPA. *See* D.C. Code

§ 28-3905(k)(2)(C). "Punitive damages may generally be included when calculating the amount

in controversy under 28 U.S.C. § 1332(a)." *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d

150, 154 (D.D.C. 2007). But, as with statutory damages and attorney's fees, "punitive damages

should be apportioned to each consumer." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 107

(D.D.C. 2008).

The Circus made another sweeping claim about the amount of punitive damages in

controversy here: "Given the extremely broad scope of the conduct Sloan identifies as potentially

violative of the CPPA, it stands to reason that any punitive damages award would be quite

large—large enough to at least double the amount in controversy." Def.'s Mem. Opp'n Pl.'s

Mot. Remand 16. This claim fails for the same reasons as the Circus's claims about Ms. Sloan's

statutory damages and attorney's fees. It is "completely speculative" and "factually

unsupported," so it should not be included in determining the amount in controversy. *Wexler*,

496 F. Supp. 2d at 154–55; *see* Def.'s Mem. Opp'n Pl.'s Mot. Remand 15–16 (lacking any

citations supporting the proposition that Ms. Sloan's punitive damages award would be "at least

double the amount in controversy"); *see also Wexler*, 496 F. Supp. 2d at 154–55 n.4 (noting that

a claim for punitive damages would also have to overcome the substantial hurdles imposed by

*State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408, 419 (2003)). Like the

Circus's claims about attorney's fees, the Circus's punitive damages assertions add speculation

to speculation by asking the Court to double an unspecified base amount in controversy.

Furthermore, the Circus failed to explain how punitive damages, which cannot be aggregated, would be apportioned to each consumer in the class. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 15–16 (neglecting to discuss aggregation or nonaggregation).

And again, if Ms. Sloan's statutory damages amount to $6,000, doubling that amount still does not get the Circus anywhere near the statutory threshold. On the record as it stands, the best estimate the Court can make of the amount in controversy is $6,000 in statutory damages and $2,000 in attorney's fees, which, when doubled for punitive damages, results in a total of $16,000. This total is barely one fifth the amount the Circus must prove to establish this Court's jurisdiction under 28 U.S.C. § 1332(a).

## F.  Injunctive Relief

The CPPA allows a prevailing plaintiff to obtain an injunction against the defendant. D.C. Code § 28–3905(k)(2)(D). Some cases in this circuit imply that injunctive costs may factor into the amount in controversy as a cost to the defendant. *See, e.g.*, *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472–73 (D.C. Cir. 1975) (alluding to injunctive costs from the defendants' position, but concluding that the jurisdictional amount was satisfied "either from the standpoint of the plaintiffs or the defendants"); *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 153–54 (D.D.C. 2007) (discussing injunctive costs but finding that the defendant failed to meet its burden to establish such costs). But other cases in this circuit question injunctive costs' inclusion. *See, e.g.*, *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105–06 (D.D.C. 2008); *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 512 F. Supp. 100, 107–08 (D.D.C. 1985). In particular, these cases take issue with injunctive costs' inclusion in class actions for damages and injunctive relief, because doing so would undermine the nonaggregation principle laid down in *Snyder v. Harris*, 394 U.S. 332, 335 (1969). *See Breakman*, 545 F. Supp. 2d at 105; *Nat'l Org.*

*for Women*, 612 F. Supp. at 108. Given "the longstanding directive that federal jurisdiction should be strictly interpreted," the Court also questions whether injunctive costs are appropriate for inclusion in the amount in controversy here. *See Breakman*, 545 F. Supp. 2d at 105.

But even assuming arguendo that injunctive costs could be included, the Circus did not argue for specific injunctive costs' inclusion in the amount in controversy. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 10–18 (avoiding discussion of specific injunctive costs). The Circus instead relies on a conclusory generalization that such costs "make[] it all the more certain" that Ms. Sloan's claims exceed $75,000. *See id.* at 11–12 n.6. The Court will thus deem the argument waived. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[U]ndeveloped arguments . . . are deemed waived.").

\*     \*     \*

In sum, the Circus has not met its burden to show by a preponderance of the evidence that the amount in controversy between the Circus and Ms. Sloan is greater than $75,000. Its claims about the amount of statutory damages, attorney's fees, and punitive damages are all speculative and unsupported. The Circus also inappropriately aggregates class-wide attorney's fees and class-wide punitive damages in its assertions. On this record, the Court can find just $16,000 in controversy between Ms. Sloan and the Circus—an amount far less than the $75,000 threshold required to establish this Court's jurisdiction under 28 U.S.C. § 1332(a). *See supra* Part VI.E. Accordingly, § 1332(a) does not allow the Court to adjudicate this action. Hence, the Circus's only hope is to demonstrate this Court's jurisdiction under another statutory grant of jurisdiction.

## VII.  CAFA JURISDICTION UNDER 28 U.S.C. § 1332(d)

In its opposition to Ms. Sloan's Motion to Remand, the Circus moved under 28 U.S.C. § 1653 to amend its Notice of Removal to plead an aggregate amount in controversy "in excess

of $5,000,000." Def.'s Mem. Opp'n Pl.'s Mot. Remand 10 n.5; *see also* 28 U.S.C. § 1653

("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate

courts."). If more than $5,000,000 is in controversy, then this case falls within the Court's

jurisdiction under 28 U.S.C. § 1332(d), which was enacted as part of the Class Action Fairness

Act of 2005 (CAFA)[9] and which allows a removing party to aggregate the amount in controversy

to establish federal-court jurisdiction. *See* 28 U.S.C. § 1332(d)(2), (6); *see also Standard Fire*

*Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (explaining that federal district courts have

original jurisdiction over class actions in which the class has more than one hundred members,

the parties are minimally diverse, and the aggregate amount in controversy exceeds $5,000,000).

As an initial matter, the Circus's motion is improperly filed. *See* D.D.C. Local Civ. R.

7(i) (requiring a motion for leave to file an amended pleading to be accompanied by an original

of the proposed pleading as amended). The Court will, however, follow precedent in this district

and entertain the Circus's amended statement. *See Breakman v. AOL, LLC*, 545 F. Supp. 2d 96,

102 (2008) (citing 28 U.S.C. § 1653, and explaining that, "[f]inding other issues dispositive," the

Court would entertain the defendant's corrected statement of citizenship for its diversity

jurisdiction analysis).

As explained below, the Court finds that the Circus has not established jurisdiction under

28 U.S.C. § 1332(d). *See infra* Parts VII.B–C.[10] The Court will therefore deny the Circus's

---

[9] Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified as amended at 28 U.S.C. §§ 1711–1715, 1332, 1453).

[10] Ms. Sloan did not contend that the proposed class has fewer than the one hundred members required for CAFA jurisdiction. *See* Reply Mem. Supp. Pl.'s Mot. Remand 6–7 (arguing that the Circus's "proof" of the number of potential class members was "fatally defective," but not that the number of potential class members was less than one hundred). *See generally* 28 U.S.C. § 1332(d)(5)(B) (declaring CAFA jurisdiction inapplicable to class actions in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

motion to amend as futile. *See generally Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 87

(D.D.C. 2015) (explaining that an amended pleading is futile if it cannot withstand a dispositive

motion).

## A. The *Dart* Framework in the CAFA Context

The *Dart* framework is applicable in the CAFA context to amount-in-controversy

challenges to removal jurisdiction. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct.

547, 551–54 (2014) (articulating the framework within a case alleging CAFA jurisdiction). Thus,

as before, the Circus must establish the requisite amount in controversy by a preponderance of

the evidence. *Id.* at 553–54. In the CAFA context, however, the requisite amount is greater—it

must exceed $5,000,000—and class members' claims are aggregated. 28 U.S.C. § 1332(d)(2), (6);

*accord Dart*, 135 S. Ct. at 551–52.

In the removal context, two additional procedural differences exist between cases

invoking CAFA jurisdiction and cases invoking plain diversity jurisdiction. First, *Dart*

eliminated in CAFA cases the antiremoval presumption typically applied in diversity cases.

*Compare Dart*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking

CAFA."), *with Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297 (D.D.C. 2013)

("[T]he Court must resolve any ambiguities concerning the propriety of removal in favor of

remand." (internal quotation marks omitted) (quoting *Johnson–Brown v. 2200 M Street LLC*, 257

F. Supp. 2d 175, 177 (D.D.C. 2003))).

------

The Court therefore considers the point conceded. *See generally Cefarrati v. JBG Props., Inc.*, 75 F. Supp. 3d 58, 69 (D.D.C. 2014) (noting that when "a party files an opposition to a motion and addresses only certain arguments raised by the movant, this court routinely treats the unaddressed arguments as conceded" (internal quotation mark omitted) (quoting *Inst. for Pol'y Studies v. U.S. Cent. Intelligence Agency*, 246 F.R.D. 380, 386 n.5 (D.D.C. 2007))). Accordingly, the Court's analysis below is limited to whether this case has the aggregate amount in controversy required for CAFA jurisdiction.

Second, Congress eliminated in CAFA cases the one-year deadline to remove typically applied to diversity cases. *See* 28 U.S.C. § 1453(b) ("[T]he 1-year limitation under section 1446(c)(1) shall not apply . . . ."); *see also id.* § 1446(c)(1) ("A case may not be removed . . . on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ."); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2015) (explaining that "a CAFA defendant who fails to meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, after a fuller record has been developed in discovery in the state court").

Despite these new considerations, the *Dart* framework still places the burden to establish federal-court jurisdiction on the party seeking removal. *See McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 138 (D.D.C. 2015) (explaining, while describing CAFA jurisdiction, that "[t]he party supporting removal bears the burden of establishing the Court's jurisdiction"); *see also Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014) (same). The Circus must therefore show that the aggregate amount Ms. Sloan's class action puts in controversy is greater than $5,000,000. And even though the Court may not apply an antiremoval presumption, the Circus must still prove the aggregate amount in controversy by a preponderance of the evidence. *Dart*, 135 S. Ct. at 553–54.

## B.  Aggregated Statutory Damages

28 U.S.C. § 1332(d)(6) declares that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds . . . $5,000,000." Thus, as a threshold matter, the Circus must identify the claims to be aggregated. *See, e.g.*, *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015) (describing the defendant's amount-in-controversy calculation and rejecting it largely because it imprecisely defined the

claims to be aggregated). The Circus, however, fails to identify claims that correspond to the proposed class described in Ms. Sloan's complaint. Its assumptions on this issue create bedrock uncertainties that ultimately defeat the Circus's efforts to establish CAFA jurisdiction.

Ms. Sloan's proposed class includes "all residents of the District who, in the last three years, purchased tickets to [the Circus's] shows because of [the Circus's] unlawful trade practices." Class Action Compl. ¶ 12. Elsewhere in her complaint, Ms. Sloan alleged that the Circus's "unlawful trade practices" took the form of communications that made false and misleading statements to the public. *Id.* ¶¶ 10, 90–91, 98. Under the class definition, therefore, class members must meet at least seven conditions: (1) they must be District of Columbia residents, (2) they must have viewed a Circus communication, (3) the Circus communication they viewed must have been one Ms. Sloan alleged is unlawful, (4) the class members must have bought Circus tickets, (5) they must have bought those tickets in the three years before Ms. Sloan filed her complaint, (6) they must have bought those tickets *after* viewing the allegedly unlawful communication, and (7) they must have bought those tickets *because of* the allegedly unlawful communication.

The Circus, however, failed to grapple with the nuances of Ms. Sloan's class definition. Instead, it defined the claims it aggregated based on just the number of ticket purchasers from the District of Columbia in the three-year period referenced in the complaint. Def.'s Mem. Opp'n Pl.'s Mot. Remand 20. The Circus, using location data it has for forty-six percent of ticket purchasers during that three-year period, asserted that it sold at least 11,470 tickets to District residents. *Id.* Because the Circus's records showed that the average purchaser bought 4.3 tickets, the Circus divided 11,470 by 4.3 to obtain "a minimum potential class size of 2,667 members." *Id.* From there, the Circus multiplied 2,667 by six (the number of CPPA "violations" the Circus

assumed Ms. Sloan alleged for each ticket purchase) and then again by $1,500 (the statutory damages per "violation") to obtain an aggregate amount in controversy of $24,003,000. *See id.* at 20–21.

Because the Circus did not incorporate all of the elements of Ms. Sloan's class definition, however, this calculation is unpersuasive from the very beginning. When the Circus estimated that 2,667 District residents would be class members, it did so solely on the basis of their (1) residency and their (2) ticket purchase in (3) the last three years. It erroneously included people who, for instance, bought tickets without ever viewing a Circus communication; bought tickets after viewing a Circus communication, but not one that was allegedly unlawful; or bought Circus tickets, but not *because of* viewing an allegedly unlawful Circus communication. For these reasons, the Circus's 2,667 figure is likely too large. Given such a shaky foundation for the rest of the Circus's calculation, the Circus's $24,003,000 estimated amount in controversy is exceptionally speculative.

As this Court has already noted, "jurisdiction cannot be based on probabilities, surmise or guesswork." *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 150, 154 (D.D.C. 2007) (internal quotation marks omitted) (quoting *Hohn v. Volkswagen of Am., Inc.*, 837 F. Supp. 943, 945 (C.D. Ill. 1993)). To be sure, in the CAFA context, the Court may not resolve ambiguities in favor of remand. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). But even in the CAFA context, unsupported speculations cannot serve as the foundation for this Court's jurisdiction. As the Ninth Circuit has explained, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). And though a damages assessment

"may require a chain of reasoning that includes assumptions," those assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199; *see also, e.g.*, *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 915–16 (11th Cir. 2014) (affirming the district court's finding that the defendant failed to establish the amount in controversy, given that the defendant "erroneously assumed that all former [Fixed Duration Employees] were eligible for all benefits and damages, without offering any proof as to this point").

Here, the Circus's calculations do not reflect "the reality of what is at stake in the litigation." *Ibarra*, 775 F.3d at 1198. As explained above, the Circus aggregated an inflated set of claims because it included claims of ticket purchasers to whom Ms. Sloan's class definition may not extend. Furthermore, the Circus assumed without justification that multiple CPPA violations, in connection with a single purchase, mean that a consumer can receive multiple $1,500 statutory damages awards. *See* Def.'s Mem. Opp'n Pl.'s Mot. Remand 20–21; *see also supra* Part VI.C (explaining why this assumption is improper). Because the Circus's claims about the aggregate statutory damages in this case are speculative and unsupported, the Circus has failed to establish the amount of aggregated statutory damages in controversy by a preponderance of the evidence.[11]

### C.  Aggregated Attorney's Fees, Punitive Damages, and Injunctive Relief

In its arguments about CAFA jurisdiction, the Circus has not presented arguments or evidence about attorney's fees, punitive damages, or injunctive relief. *See* Def.'s Mem. Opp'n

---

[11] The Circus also noted that, because it has residency data for only forty-six percent of the tickets it sold to its shows in the District of Columbia area, the amount in controversy could be "at least $53,100,000.00," taking all tickets sold to its D.C. shows into account. Def.'s Mem. Opp'n Pl.'s Mot. Remand 21 n.10. Because this calculation uses the same faulty assumptions used for the Circus's $24,003,000 figure, *see id.*, the Circus has also failed to establish its $53,100,000 figure by a preponderance of the evidence.

Pl.'s Mot. Remand 18–21. The Court therefore deems these arguments waived. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013). But for the reasons set forth previously concerning plain diversity jurisdiction, any assertions on these issues with respect to CAFA jurisdiction would fail as well.

*     *     *

Just as the Circus did not establish the requisite amount in controversy for diversity jurisdiction under 28 U.S.C. § 1332(a), the Circus likewise did not establish the requisite amount in controversy for CAFA jurisdiction under 28 U.S.C. § 1332(d). Its aggregated statutory damages estimate is far too speculative, and it failed to make arguments about additional sources of the amount in controversy. Because the Circus's CAFA arguments are futile and would not alter this Court's lack of jurisdiction over Ms. Sloan's suit, the Circus's motion to amend its Notice of Removal is denied.

**CONCLUSION**

Because this case does not fall within the Court's jurisdiction under either 28 U.S.C. § 1332(a) or 28 U.S.C. § 1332(d), it must be remanded to the Superior Court of the District of Columbia. Accordingly, Ms. Sloan's motion to remand (ECF No. 11) is **GRANTED**, the Circus's motion to dismiss (ECF No. 7) is **DENIED AS MOOT**, Ms. Sloan's motion for class certification (ECF No. 13) is **DENIED AS MOOT**, and the Circus's motion for a protective order (ECF No. 20) is **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 18, 2015                    RUDOLPH CONTRERAS
                                             United States District Judge